UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

In re: )
)
    VARGAS, VICTOR )   Main Case No. 09-05420
)
)
                    Debtor. )
_____ )   DECISION

      This matter came before the Court on the motion for order of contempt filed by debtor Victor Vargas, seeking an award of sanctions against creditor Wells Fargo Bank for violation of the discharge injunction of 11 U.S.C. § 524(a). An evidentiary hearing was held on January 25, 2012. At that hearing, the debtor did not appear but he was represented by attorney Seth Reynolds. Creditor Wells Fargo Bank was represented by its attorney Gregory C. Hessler. At the hearing, the Court heard and considered the testimony of Matt Nissen. The Court considered debtors exhibits A-K and creditors exhibits 1-8. The discharge injunction of § 524(a)(2) enjoins creditors from attempting to collect from the debtor or from the debtor's assets any debts that have been discharged. Watson v. Shandell (In re Watson), 192 B.R. 739, 749 (9th Cir. BAP 1996). Mr. Vargas' motion for sanctions for violation of the discharge injunction is a core proceeding under 28 U.S.C. § 157(b)(2). Dunmore v. United States, 358 F.3d 1107, 1114 (9th Cir. 2004).

-1-

The Court makes the following findings of fact from the evidence and testimony presented at the evidentiary hearing:

(1) Victor Vargas filed a petition for relief under chapter 7 of Title 11 on September 28, 2009. On his petition he provided a Tax ID number.

(2) On his bankruptcy schedules, he listed two debts owed to creditor Wells Fargo, an unsecured line of credit in the amount of $7,100.00 and a mortgage debt secured by a house at 1209 East Chestnut Avenue, Yakima, WA, in the amount of $73,500.00. For the line of credit, he listed a Wells Fargo account number.

(3) On his Schedule C, he claimed the small equity in the house as exempt. On his Statement of Intentions, he indicated an intent to reaffirm the Wells Fargo debt secured by the house.

(4) On his schedules and mailing matrix, Mr. Vargas used two addresses for Wells Fargo: (1) P.O. Box 60510, Los Angeles, CA 90006 and (2) Customer Management P.O. Box 95225, Albuquerque, NM 87199-5225.

(5) On September 29, 2009, The Bankruptcy Notice Center electronically notified Wells Fargo about Mr. Vargas' bankruptcy case and on October 1, 2009, the center mailed official Form 9, the notice of Mr. Vargas' bankruptcy case, to the bank at the two addresses provided by the debtor.

(6) On September 30, 2009, notice of Mr. Vargas' bankruptcy was received by Wells Fargo and inputted into Wells Fargo's system for checking bankruptcies against its customer base. The system Wells Fargo uses to check bankruptcy notices against its customer base utilizes social security numbers. The underlying rationale for this system is that each person's social security number is unique.

(7) When Wells Fargo received its notice of Mr. Vargas' bankruptcy filing, the bank determined that the debtor was not a Wells Fargo customer because the Tax ID number used by Mr. Vargas for his bankruptcy case did not match the social security number he provided the bank when he applied for credit.

(8) If Wells Fargo had checked Mr. Vargas' bankruptcy schedules, which Mr. Nissen testified it could have done, the bank would have learned that Mr. Vargas was a Wells Fargo customer.

(9) For some time before the bankruptcy petition was filed, Wells Fargo had been unsuccessfully trying to contact Mr. Vargas about his unsecured line of credit. Post petition these efforts continued. After the bankruptcy was filed, Mr. Vargas continued to pay the secured debt that he intended to reaffirm with Wells Fargo but not the unsecured debt that he was seeking to discharge. The fact that he was paying one debt and not the other was noted by the bank on November 25, 2009.

(10) On December 2, 2009, Mr. Vargas' attorney mailed a notice of stay containing essential bankruptcy information to: Wells Fargo Personal Credit Mgt, MAC # N9777-113 pcm, P.O. Box 5169, Sioux Falls, SD 57117-5169.

(11) In December, Wells Fargo assigned Mr. Vargas' personal line of credit account for collection.

(12) On January 14, 2010, the Wells Fargo system for checking bankruptcies against its customer base received a hit and again the bank checked to see if debtor Vargas was its customer and again the bank decided he was not, based upon the different social security numbers. The bank continued its collection efforts.

(13) On January 26, 2010, Mr. Vargas' attorney or at least someone from his office contacted the Wells Fargo Bankruptcy Department and discussed a reaffirmation agreement for the Chestnut house. On the same day, Wells Fargo initiated a another bankruptcy inquiry, which again resulted in the bank determining that the debtor was not their customer based upon different social security numbers.

(14) On February 2, 2010, Mr. Vargas received a discharge. Two days later, the Bankruptcy Notice Center electronically transmitted and mailed notice of Mr. Vargas' discharge to Wells Fargo.

(15) Again the Wells Fargo system received a hit regarding Mr. Vargas and again Wells

Fargo determined he was not a customer because the social security numbers did not match.

(16) On each occasion that Wells Fargo's system received a hit regarding Mr. Vargas' bankruptcy, the system checked and determined he was not a customer because the debtor's Tax ID number did not match the customer's social security number. On each occasion, the system removed the bankruptcy reference from the file and continued its collection efforts. According to Mr. Nissen no other result was likely so long as the social security number and the Tax ID number did not match.

(17) During this period Mr. Vargas maintained a checking account at Wells Fargo and he deposited into that account the monthly payment for the debt secured by the Chestnut house. Each month the house payment would be automatically removed from the account by Wells Fargo.

(18) On October 14, 2010, in response to a notice from Wells Fargo dated October 5, 2010, Mr. Vargas' attorney sent a letter to Wells Fargo Servicing Center Home Equity Payment Processing Department, informing the bank that its collection efforts violated the § 524 discharge injunction. The attorney's letter included a copy of the chapter 7 discharge and a copy of the notice sent to Mr. Vargas.

(19) On the same day, October 14th, Wells Fargo offset the money in Mr. Vargas' checking account against the unsecured line of credit that had been discharged in his bankruptcy case. The money removed from Mr. Vargas' checking account was the money that he had deposited for his house payment.

(20) On October 26, Mr. Vargas went to his local Wells Fargo bank and inquired about the offset. As a result of this contact, the bank's local representative called the collection department responsible for offsetting the bank account. In the bank's notation about this visit, on Exhibit 6, there is no reference to bankruptcy. In view of all the facts, including his attorney's October 14th letter, it would be reasonable to infer that Mr. Vargas had informed the bank's representatives about his bankruptcy. Regardless of whether he did or did not inform the bank about his bankruptcy on October 26th, Wells Fargo had been informed about

Mr. Vargas' bankruptcy by the previous communications, including the October 14th letter from his attorney.

(21) Because Wells Fargo had offset the money Mr. Vargas had deposited in his bank account for the house payment, and applied that sum to the discharged debt, the house payment due the next day was not paid.

(22) Shortly thereafter, around January 7, 2011, the bank began a foreclosure on the Chestnut house, identifying the default as the failure to pay when due four payments from September 15, 2010, for a total of arrearage of $2,575.48.

(23) At the hearing, Wells Fargo argued that they bank had foreclosed on the property because Mr. Vargas had filed a petition for relief under chapter 7 and discharged the debt secured by the house. The record does not support this argument. The record shows that post petition Mr. Vargas made and the bank accepted payments on the Chestnut house. The cause of the default on the debt secured by the Chestnut house was the October 14th offset and the bank's subsequent actions.

(24) On February 1, 2011, Mr. Vargas filed an adversary lawsuit naming Wells Fargo as a defendant and alleging violation of § 524(a), which was subsequently served on the bank.[1]

(25) On February 22, 2011, Wells Fargo ceased its collection efforts, reversed its charges, and sent a cashier's check to Mr. Vargas.

Conclusions of Law

The discharge injunction prohibits any attempt to collect a debt that has been discharged. In this case, Victor Vargas received a discharge. Included in the debts for which he received a discharge is the Wells Fargo unsecured line of credit. Post discharge, any attempt to collect that debt would be a violation of the discharge injunction provided for in § 524(a). When the bank offset the

---

[1] Based upon Barrientos v. Wells Fargo Bank, N.A., 633 F.3d 1186 (9th Cir. 2011), the plaintiff voluntarily dismissed the lawsuit, reopened the chapter 7 bankruptcy case, and filed a motion for contempt.

-5-

funds in Mr. Vargas' bank account against the discharged line of credit debt, the bank violated the discharge injunction.

A violation of the discharge injunction is punishable by contempt of court. Espinosa v. United Student Aid Funds, Inc. (In re Espinosa), 553 F.3d 1193, 1200 (9th Cir. 2008) affirmed ____ U.S. ___, 130 S.Ct. 1367, 176 L.Ed.2d 158 (U.S. 2010). To justify sanctions, the moving party must prove that the creditor (1) knew the discharge injunction was applicable, and (2) intended the actions which violated the injunction. ZILOG, Inc. v. Corning (In re ZILOG, Inc.), 450 F.3d 996, 107 (9th Cir. 2006). The moving party has the burden of showing by clear and convincing evidence that the creditor violated the discharge injunction. The burden then shifts to the creditor to demonstrate why the creditor was unable to comply. F.T.C. v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999). If Mr. Vargas satisfies his burden of proof, this Court can impose upon Wells Fargo sanctions for civil contempt, which may consist of remedial and compensatory but not punitive sanctions. Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1193 (9th Cir. 2003).

As previously stated, the evidence is uncontraverted that the bank violated the discharge injunction. The issue that needs to be resolved is whether sanctions should be imposed. Did Wells Fargo willfully violate the permanent discharge injunction? A willful violation does not require a specific intent to violate the discharge injunction. Havelock v. Taxel (In re Pace), 67 F.3d 187, 193 (9th Cir. 1995). Actual knowledge of the injunction and volitional act that violates the injunction is sufficient to trigger sanctions. Espinosa, 53 F.3d at 1205 n.7. Hardy v. United States (In re Hardy), 97 F.3d 1384, 1390 (11th Cir. 1996). To paraphrase the court in Pace, whether or not a creditor believes in good faith it had a right to collect the debt is not relevant to whether the act was willful. Pace, 67 F.3d at 191; Pinkstaff v. United States (In re Pinkstaff), 974 F.2d 113, 115 (9th Cir. 1992). The question is whether the creditor, having knowledge of the discharge injunction, acted intentionally. Wells Fargo does not dispute that it acted intentionally.

The bank argues it did not have actual knowledge of the discharge injunction. Ordinarily, receipt of notice of the debtor's discharge is sufficient to establish the knowledge element. ZILOG, 450 F.3d at 1008 (citing Dyer, 322 F.3d at 1191; Hardy, 97 F.3d at 1390. In ZILOG, however, the

-6-

Court emphasized that a party cannot be held in contempt for violating an injunction absent knowledge of that injunction, which is a question of fact that must be proven by clear and convincing evidence.  ZILOG, 450 F.3d at 1007-8.

Here, the bank received notice of Mr. Vargas' bankruptcy on September 30, 2009, and notice of Mr. Vargas' discharge on or about February 2, 2010.  Because the social security numbers were different, the bank continued the collection efforts that initially violated the automatic stay and thereafter violated the permanent injunction.  The record clearly establishes that Wells Fargo is sensitive about not violating bankruptcy court injunctions and had established a system for preventing violations.  Also the court acknowledges that in most instances a system based upon social security numbers should work.  But such a system is not one hundred percent fool proof, as demonstrated by the facts in this case.  Undoubtly the bank can be excused for its initial mistake regarding whether the debtor was a bank customer.  Mr. Vargas caused the problem by giving the bank a social security number that did not match the Tax ID number he used for his bankruptcy case.

Here the problem is what happened during Mr. Vargas' bankruptcy case and after his discharge was entered.  During the case, apparently in response to the bank's post petition collection efforts, the debtor's attorney sent the bank a notice of stay, informing the bank that the debtor indeed was one of its customers and that its collection efforts violated the automatic stay.  Later, the bank was contacted about a reaffirmation agreement for the bank debt secured by the debtor's house.  Post discharge, again in response to collection efforts, the debtor's attorney sent a letter to the bank, informing the bank about the bankruptcy, the bank's status as a creditor, the debtor's discharge, and the bank's violation of the discharge injunction.  In response to these notices, which definitively informed the bank that Mr. Vargas was a bank customer and that the bank was a creditor impacted by his bankruptcy, the bank obstinately refused to acknowledge the bankruptcy and continued its collection efforts that violated bankruptcy court injunctions.  Significantly the bank continued its violation of the discharge injunction for several months after it was informed about Mr. Vargas' discharge.  According to Mr. Vargas, the system that the bank put in place allowed for no other response.

The bank's position appears to be that it bears no responsibility for violating the discharge injunction because it has shown that it established a reliable system for checking bankruptcies and the system failed because Mr. Vargas provided the bank with false information. If this is the bank's position, the Court rejects it. The bank's obligation to comply with the bankruptcy court injunction does not depend upon the debtor's conduct. Wells Fargo was obligated to comply with the discharge injunction once it knew about Mr. Vargas' bankruptcy and discharge. Lone Star Security and Video, Inc. v. Gurrola (In re Gurrola), 328 B.R. 158, 174-75 (9th Cir. BAP 2005). The Court finds by clear and convincing evidence that Wells Fargo knew about Mr. Vargas' discharge since October 2010. And the Court further finds by the same evidentiary standard that Wells Fargo intended the actions that violated the discharge injunction.

Mr. Vargas has requested that the Court impose coercive and compensatory sanctions. Section 524 does not prescribe a specific remedy for violation of the discharge injunction. A violation of the discharge injunction is sanctioned through a proceeding for civil contempt under § 105(a). Dyer, 322 F.3d at 1192-93. Coercive civil contempt imposes sanctions, such as fines or imprisonment, to compel compliance with court orders. Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc., 539 F.3d 1039, 1044 (9th Cir. 2008). Civil sanctions are only remedial. Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517 (9th Cir. 1992).

The Court finds that sanctions are not required to coerce compliance in this case. At trial, Mr. Vargas' counsel indicated that he was requesting coercive damages related to the bank's seizure of the money in Mr. Vargas' bank account. The parties informed the Court that Wells Fargo had terminated the foreclosure and reinstated the house debt, although the issue of damages for wrongful foreclosure remains pending in state court. The bank returned the wrongfully seized money approximately one month after Mr. Vargas' adversary lawsuit was filed but several months before the current motion for contempt was filed. At this point, there is no reason to believe that the bank will not comply with the discharge injunction.

Mr. Vargas also seeks compensatory sanctions against the bank for attorney fees and costs. The bankruptcy court has discretion to impose such damages. For the reasons stated in this opinion,

-8-

1  Mr. Vargas is awarded his attorney fees and costs as a sanction for violation of the discharge
2  injunction.  The debtor has fourteen days from the date this decision is filed to submit a certificate in
3  support of his claim for attorney fees and costs.  A copy of the certificate shall be provided to the
4  bank's counsel who have twenty four days from the date this decision is filed to submit an objection
5  to Mr. Vargas' claim.  If an objection is received, the Court will schedule a hearing.

_Frank L. Kurtz_
Frank L. Kurtz
Bankruptcy Judge

02/29/2012 14:40:00

-9-

09-05420-FLK7    Doc 78    Filed 02/29/12    Entered 03/01/12 13:46:41    Pg 9 of 9